## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NAB AUTOMATION, INC., | ) |
|           Plaintiff, | ) |
| vs. | ) Case No. |
| ATCHISON ELECTRIC, INC., | ) |
| <u>Serve</u>: 1015 W. Jackson St. | ) JURY TRIAL DEMANDED |
|       Sullivan, IL 61951 | ) |
| and | ) |
| SCOTT ATCHISON, | ) |
| <u>Serve</u>: 1015 W. Jackson St. | ) |
|       Sullivan, IL 61951 | ) |
| and | ) |
| JAKE KOESTER, | ) |
| <u>Serve</u>: 1015 W. Jackson St. | ) |
|       Sullivan, IL 61951 | ) |
|           Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff NAB Automation, Inc., by counsel, and for its Complaint against Defendants Atchison Electric, Inc., Scott Atchison and Jake Koester states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1. NAB Automation, Inc. ("NAB Automation") is a Missouri corporation with its principal place of business in Scott County, Missouri.

2. Defendant Atchison Electric, Inc., ("Atchison Electric") is an Illinois corporation with its principal place of business in Moultrie County, Illinois.

3. Atchison Electric does business under the assumed name A.I. Automation Systems.

4. Defendant Scott Atchison is an individual believed to be residing in Moultrie County, Illinois.

5. Defendant Jake Koester is an individual believed to be residing in Moultrie County, Illinois.

6. Jurisdiction is proper in this Court in that the action is authorized by 18 U.S.C. §1836.

7. Jurisdiction is proper in this Court in that the parties are citizens of different states and the amount at issue exceeds $75,000.

8. Venue is proper in this District in that a substantial part of the events giving rise to this claim, and a substantial part of the property at issue, is located in this District.

6. NAB Automation provides automation services to industrial, agricultural and aquacultural businesses.

7. NAB Automation uses various computer programs and equipment in its operations.

8. The computer programs were created by NAB Automation and tailored to its specific customers.

9. In 2021, Defendant Scott Atchison contacted NAB Automation's owner, Mike Jordan about purchasing NAB Automation's computer programs and equipment.

10. Mike Jordan had suffered various heart conditions and was looking to sell NAB Automation's computer programs and equipment to someone that would be able to continue taking care of NAB Automation's customers.

11. Scott Atchison and his brother travelled to Mike Jordan's home in Ullin, IL to view the computer programs and equipment.

12. At the time, Atchison Electric was not in the automation business.

13. Scott Atchison represented to Mike Jordan that Atchison Electric wanted to enter the automation business but did not have the equipment, programs and customer base to do so.

14. Scott Atchison represented Atchison Electric was starting a new automation company and hiring a person with experience in this area named Jake Koester.

15. Mike Jordan offered to sell NAB Automation's computer programs and equipment at a discounted price if Defendants would take care of NAB Automation's existing customers.

16. Mike Jordan offered to introduce Scott Atchison and his team to NAB Automation customers.

17. Scott Atchison represented Defendants would be willing to do this.

18. Mike Jordan introduced Jake Koester to various customers, explaining that Defendants were entering this business and would be able to take care of them.

19. In December 2021, Scott Atchison again came to Mike Jordan's home in Ullin, IL, this time with an employee named "Brian".

20. The parties agreed the price for the computer programs and equipment would be $150,000.00.

21. Scott Atchison represented Defendants would pay half of the $150,000.00 up front and the other half in six months.

22. Scott Atchison represented Defendants needed to take the computer programs and equipment now but would draw up an official contract and send it to Mike Jordan for review.

23. Scott Atchison and Brian took all of NAB Automation's computer programs and equipment with them, including but not limited to five laptop computers, a server, hard drives, and all programs and files included in these items.

24. The hard drives contained all current and historical information relating to NAB Automation's projects, development and operations.

25. NAB Automation owns various assets in addition to computer programs and equipment, e.g. real estate, vehicles, etc.

26. More than a month later, Scott Atchison e-mailed a draft contract to Mike Jordan in which Atchison Electric purported to "purchase NAB Automation", and not just the agreed upon computer programs and equipment.

27. When Mike Jordan informed Scott Atchison of the issue, Scott Atchison became enraged and later said he would send another contract.

28. When Mike Jordan asked about the items Scott Atchison had taken, Scott Atchison stated that the items could not be returned at this time because they were at Jake Koester's house.

29. On March 17, 2022, Scott Atchison met Mike Jordan in Salem, IL and informed Mike Jordan that Defendants no longer wanted NAB Automation's computer programs and equipment and would not pay for any of it.

30. On or about March 23, 2022, Scott Atchison sent a letter to NAB Automation, stating Defendants would not be purchasing the items.

31. After Defendants purportedly returned these items, NAB Automation learned that Atchison Electric was still giving quotes to NAB Automation customers and working on projects for them.

32. NAB Automation learned that rather than giving back NAB Automation's computer programs, Defendants had made copies of everything and were using NAB Automation's computer programs on various projects.

33. Defendants had represented to NAB Automation that they wanted to buy it's computer programs, took possession of them, made copies and then returned them under the pretense of no longer being interested.

34. Among other things, the stolen programs include but are not limited to NAB Automation's PLC, HMI and HMS programs for various customers, such as Ohl Farms, Wright Farms, Top Flight Grain, Heritage Family Farms and Legacy Grain.

35. Defendants' actions represent an intentional conspiracy to convert NAB Automation's property and use it in their own business without paying for it.

## COUNT I – MISAPPROPRIATION OF TRADE SECRETS UNDER THE FEDERAL DEFEND TRADE SECRETS ACT

36. NAB Automation incorporates the above common allegations herein.

37. NAB Automation owns the computer programs identified herein, which constitute valid trade secrets that derive independent value from not being generally known to, and not being readily ascertainable through proper means by other persons.

38. NAB Automation took reasonable steps to protect and maintain the secrecy of its computer programs.

39. Said programs were designed and created by NAB Automation and were provided to Defendants only in return for a promise to purchase them.

40. NAB Automation immediately demanded the programs back upon learning that Defendants did not intend to pay for them.

41. The computer programs are used in NAB Automation's own business and the business of its customers in interstate commerce.

42. Defendants misappropriated the computer programs in one or more of the following ways:

    a. By copying the computer programs in excess of the authorization granted by NAB Automation;

    b. By inducing NAB Automation to provide the computer programs to Defendants through fraud and misrepresentation;

    c. By disclosing and/or using the computer programs without NAB Automation's consent for Defendants' own commercial benefit after acquiring such information through improper means;

    d. By disclosing and/or using the computer programs without NAB Automation's consent for Defendants' own commercial benefit while knowing or having reason to know that the computer programs were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

43. Defendants took such actions willfully, maliciously, and/or in reckless disregard of NAB Automation's rights in that Defendants knew, or had reason to know, that they were not authorization to copy and use the computer programs in competition with NAB Automation or to use the computer programs for their own commercial benefit.

44. As a result of Defendants' misappropriation, NAB Automation has and will continue to suffer actual damages, and/or Defendants have been unjustly enriched.

45. If Defendants' conduct is not enjoined, NAB Automation will continue to suffer severe competitive harm, irreparable injury and significant damages.

46. NAB Automation is entitled to recover its actual damages and disgorgement of Defendants' unjust enrichment, or, in the alternative, at least a reasonable royalty for Defendants' unauthorized misappropriation, disclosure, and/or use of its computer programs.

47. NAB Automation is entitled to exemplary and/or punitive damages for Defendants' willful and malicious misappropriation of NAB Automation's computer programs.

48. NAB Automation is entitled to recovery of its attorneys' fees because of Defendants' willful and malicious misappropriation of NAB Automation's computer programs.

WHEREFORE, NAB Automation prays that this Court enter judgment in its favor, and award actual, exemplary and/or punitive damages in an amount that is fair and reasonable, award appropriate injunctive relief, award interest, costs and attorneys' fees where available, and award such other and further relief as is just and proper under the circumstances.

### COUNT II – MISAPPROPRIATION OF TRADE SECRETS UNDER THE ILLINOIS TRADE SECRETS ACT

49. NAB Automation incorporates the above common allegations herein.

50. NAB Automation owns the computer programs identified herein, which constitute valid trade secrets that derive independent value from not being generally known to, and not being readily ascertainable through proper means by other persons.

51. NAB Automation took reasonable steps to protect and maintain the secrecy of its computer programs.

52. Said programs were designed and created by NAB Automation and were provided to Defendants only in return for a promise to purchase them.

53. NAB Automation immediately demanded the programs back upon learning that Defendants did not intend to pay for them.

54. The computer programs are used in NAB Automation's own business and the business of its customers in interstate commerce.

55. Defendants misappropriated the computer programs in one or more of the following ways:

   a. By copying the computer programs in excess of the authorization granted by NAB Automation;

   b. By inducing NAB Automation to provide the computer programs to Defendants through fraud and misrepresentation;

   c. By disclosing and/or using the computer programs without NAB Automation's consent for Defendants' own commercial benefit after acquiring such information through improper means;

   d. By disclosing and/or using the computer programs without NAB Automation's consent for Defendants' own commercial benefit while knowing or having reason to know that the computer programs were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

56. Defendants took such actions willfully, maliciously, and/or in reckless disregard of NAB Automation's rights in that Defendants knew, or had reason to know, that they were not authorization to copy and use the computer programs in competition with NAB Automation or to use the computer programs for their own commercial benefit.

57. As a result of Defendants' misappropriation, NAB Automation has and will continue to suffer actual damages, and/or Defendants have been unjustly enriched.

58. If Defendants' conduct is not enjoined, NAB Automation will continue to suffer severe competitive harm, irreparable injury and significant damages.

59. NAB Automation is entitled to recover its actual damages and disgorgement of Defendants' unjust enrichment, or, in the alternative, at least a reasonable royalty for Defendants' unauthorized misappropriation, disclosure, and/or use of its computer programs.

60. NAB Automation is entitled to exemplary and/or punitive damages for Defendants' willful and malicious misappropriation of NAB Automation's computer programs.

61. NAB Automation is entitled to recovery of its attorneys' fees because of Defendants' willful and malicious misappropriation of NAB Automation's computer programs.

WHEREFORE, NAB Automation prays that this Court enter judgment in its favor, and award actual, exemplary and/or punitive damages in an amount that is fair and reasonable, award interest, costs and attorneys' fees where available, and award such other and further relief as is just and proper under the circumstances.

## COUNT III – FRAUD/CONSPIRACY

62. NAB Automation incorporates the above common allegations herein.

63. Defendants jointly engaged in a conspiracy to acquire NAB Automation's property without paying for it.

64. Defendants represented that they wanted to purchase NAB Automation's computer programs.

65. Defendants represented they wanted to purchase NAB Automation's customer lists.

66. Defendants represented to NAB Automation that they would pay for NAB Automation's computer programs and customers lists.

67. In fact, Defendants knew this was false.

68. Defendants made these false representations in order to induce NAB Automation to give Defendants possession of the computer programs and introduce Defendants to customers.

69. The representations were material to NAB Automation in that NAB Automation would not have given over possession of the computer programs and introduced Defendants to customers without the promise of payment.

70. NAB Automation justifiably relied on Defendants' representations in that NAB Automation had a previous relationship with Atchison Electric and Defendants made repeated representations that NAB Automation would be paid.

71. Among other things, Defendant Scott Atchison took NAB Automation's property from its owner's home under false pretenses.

72. Among other things, Defendant Jake Koester illegally copied NAB Automation's computer programs.

73. Among other things, Defendants used NAB Automation's illegally acquired computer programs to perform work for NAB Automations' customers.

74. As a direct and proximate result of Defendants' fraud, NAB Automation has suffered damages, including:

    a. The fair market value of the stolen computer programs, which exceeds the discount price of $150,000 offered to Defendants;

    b. The fair market value of NAB Automation's customer lists and good will; and

      c. The lost value to NAB Automation's business without exclusive possession of its proprietary software.

75. Defendants' actions were malicious and outrageous due to their evil motive and/or reckless indifference to the rights of NAB Automation.

WHEREFORE, NAB Automation prays that this Court enter judgment in its favor, and award compensatory damages and punitive damages in an amount that is fair and reasonable in excess of $75,000, award interest, costs and attorneys' fees where available, and such other and further relief as is just and proper under the circumstances.

## COUNT IV – CONVERSION

76. NAB Automation incorporates the above common allegations herein.

77. Defendants wrongfully took possession of NAB Automation's computer programs under false pretenses.

78. NAB Automation has a right to immediate possession of the computer programs, absolutely and unconditionally.

79. NAB Automation demanded that Defendants return the computer programs, but Defendants refused.

80. In fact, Defendants made illegal copies of NAB Automation's computer programs and falsely represented to NAB Automation that they had been returned in full.

81. Defendants used NAB Automation's illegally acquired computer programs to perform work for NAB Automations' customers.

82. NAB Automation is entitled to damages consisting of the fair market value of the stolen computer programs, which exceeds the discount price of $150,000 offered to Defendants.

83. Defendants' actions were malicious and outrageous due to their evil motive and/or reckless indifference to the rights of NAB Automation.

WHEREFORE, NAB Automation prays that this Court enter judgment in its favor, and award compensatory damages and punitive damages in an amount that is fair and reasonable in excess of $75,000, award interest, costs and attorneys' fees where available, and such other and further relief as is just and proper under the circumstances.

## COUNT V – UNJUST ENRICHMENT

84. NAB Automation incorporates the above common allegations herein.

85. Defendants have been enriched by taking NAB Automation's valuable and proprietary computer programs without paying for them.

86. NAB Automation has been impoverished by Defendants' illegal taking of the computer programs.

87. As a direct and proximate result of Defendants' fraud, NAB Automation has suffered damages, including:

   a. The fair market value of the stolen computer programs, which exceeds the discount price of $150,000 offered to Defendants;

   b. The fair market value of NAB Automation's customer lists and good will; and

   c. The lost value to NAB Automation's business without exclusive possession of its proprietary software.

88. Defendants were not justified in their illegal acts of taking NAB Automation's computer programs.

89. NAB Automation has no adequate remedy at law.

WHEREFORE, NAB Automation prays that this Court enter judgment in its favor, and award compensatory damages and punitive damages in an amount that is fair and reasonable in excess of $75,000, award interest, costs and attorneys' fees where available, and such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

THE LIMBAUGH FIRM
407 N. Kingshighway, P.O. Box 1150
Cape Girardeau, MO  63702-1150
Telephone: (573) 335-3316
Facsimile: (573) 335-0621
Email:  jsteffens@limbaughlaw.com


By    /s/ John C. Steffens
        John C. Steffens - #6305081

ATTORNEYS FOR PLAINTIFF